UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WAYNE G. DAY** | **CIVIL ACTION** |
| **versus** | **No. 07-3539** |
| **LOCKHEED MARTIN SPACE SYSTEMS COMPANY**<br>*D/B/A* **LOCKHEED MARTIN CORPORATION**, *et al.* | **SECTION: I/1** |

### ORDER AND REASONS

Before the Court is defendants', Cheryl Alexander's ("Alexander") and Lockheed Martin Corporation's ("LMC"), motion for summary judgment. For the following reasons, defendants' motion is **GRANTED** with respect to plaintiff's USERRA claims against Alexander and LMC and such claims are **DISMISSED WITH PREJUDICE**. Plaintiff's supplemental LMSRA claims are **DISMISSED WITHOUT PREJUDICE**.

### *Background*

Plaintiff, Wayne G. Day ("Day"), began working for LMC in 1979 as a Specialist Senior, Program Planning, in LMC's Planning & Control Directorate.[1] At that time, Day was a "drilling reservist" in the United States Navy Reserve.[2]

From 1997 through 2004, in relation to his service as a Naval

---

[1] Rec. Doc. No. 39-2, p. 1. At the time Day first began work in 1979, he was actually employed by LMC's predecessor corporation, Martin Marietta. Rec. Doc. No. 44, p. 1.

[2] Rec. Doc. No. 39-2, pp. 1-2; Rec. Doc. No. 44, p. 1. Prior to being employed by LMC in 1979, Day served as an active duty enlisted man in the United States Navy during 1971-1975. Rec. Doc. No. 1, p. 2, para. 7. After being released from active duty in 1975, Day continued his military service in the United States Navy Reserve. *Id.*

Intelligence Officer,[3] Day received sixteen sets of individual voluntary and involuntary mobilization orders.[4] Each time Day received mobilization orders, he requested a military leave of absence from LMC.[5] As a result of his mobilization orders and military leaves of absence, Day was absent from LMC for seven consecutive years from 1997-2004.

While Day was on military leave in 2002, LMC underwent corporate re-organization. As a result of this re-organization, the Planning & Control Department to which Day was assigned was consolidated with LMC's Program Management & Technical Operations department ("PMTO") and Day's former position was eliminated.[6]

On August 8, 2004, Day was honorably discharged from active duty.[7] Soon thereafter, Day requested re-employment with LMC.[8]

On December 1, 2004, LMC offered Day a position as a Project Management and Planning Operations Representative in the planning

---

[3]Day received a commission as an officer in the United States Navy Reserve in February, 1990. Rec. Doc. No. 1, p. 2, para. 7.

[4]Rec. Doc. No. 44, p. 3. The parties do not dispute that, as a result of his repeated mobilization from 1997-2004, Day was absent from work for seven consecutive years. Rec. Doc. No. 39-2, p. 2.

[5]Rec. Doc. No. 44, p. 4. Day requested several military leaves of absence from 1979 to 1997. Rec. Doc. No. 39-2, p. 2. However, after each leave of absence during this period, Day returned to work at LMC without incident. *Id*.

[6]Rec. Doc. No. 39-2, p. 5. LMC conducted employee terminations in connection with the 2002 corporate re-organization. LMC claims that Day's performance rating was such that he would have been terminated in 2002 had he not been away on military leave. Rec. Doc. No. 39-2, p. 6.

[7]Rec. Doc. No. 39-2, p. 2. Rec. Doc. No. 44, p. 4. *See also* Rec. Doc. No. 39-5 "Day's DD Form 214."

[8]Rec. Doc. No. 39-2, p. 2. Rec. Doc. No. 44, p. 4. LMC admits that it received Day's re-employment request in mid-August 2004. Rec. Doc. No. 39-2, p. 2 "Defendants' Exhibit 1, para. 13."

and Integration subgroup in the PMTO department.[9]  Day accepted the position and was re-employed on December 6, 2004, with a salary of $76,500.[10]

After being re-employed in 2004, Day took additional military leaves of absence during 2005-2006.[11]  Each time Day returned from his leaves of absence during this period, he was promptly re-employed by LMC.  On January 1, 2007, Day retired from LMC with a salary of $83,037.[12]

On June 29, 2007, Day filed the above-captioned lawsuit against Alexander and LMC (collectively "defendants") alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA")[13] and the Louisiana Military Service Relief Act ("LMSRA").[14]  Day alleges that, upon his return from active duty

---

[9] Rec. Doc. No. 39-2, p. 7.  The position that LMC offered Day was a senior staff position with an E-4 salary grade.  *Id.*

[10] Rec. Doc. No. 39-2, p. 7.  LMC claims that Day's re-employment salary was an increase in pay compared to the $66,144 salary that Day earned when he left for military leave in 1997.  *Id.*  Day argues that his re-employment salary was far less than he would have been entitled to had he remained at LMC continuously during 1997-2004.  Rec. Doc. No. 44, p. 4.  Day argues that the salary at which he was re-employed was "arbitrary compensation" specifically tailored to be lower than any of the same level employees in the PMTO department.  *Id.* at p. 5.

[11] Rec. Doc. No. 39-2, p. 7.  According to LMC, Day took military leaves of absence in February, 2005 (6 months), March, 2006 (one week), and July, 2006 (one week).  *Id.* at pp. 7-8.

[12] *Id.* at p. 8.

[13] USERRA is codified in 38 U.S.C.A. § 4301.  Day specifically alleges violations of 38 U.S.C.A. §§ 4312, 4316, and 4318.  Rec. Doc. No. 1, p. 5, para. 24.

[14] LMSRA is codified in La. Rev. Stat. Ann. § 29:401.  Day specifically alleges violations of La. Rev. Stat. Ann. §§ 29:406(C), 29:411, 29:413, and 29:423.  *Id.*
    Day asserts that jurisdiction exists over Day's USERRA claims pursuant to 38 U.S.C.A. § 4323(b)(3) or, alternatively, 28 U.S.C.A. § 1331.  Rec. Doc. No. 1, p. 1, para. 4.  Section 4323(b)(3) provides, "in the case of an action against

in August, 2004, defendants initially refused to re-hire Day in violation of USERRA and LMSRA.[15]  Day further alleges that defendants violated USERRA and LMSRA by failing to comply with LMC's corporate policy of providing military reservists employed by LMC with certain employment benefits.[16]  Day asserts that the foregoing alleged violations were willful and, therefore, he is entitled to liquidated damages in addition to any other damages he may recover.[17]

On January 30, 2008, defendants filed this motion arguing that there are no genuine issues of material fact with respect to Day's claims against them and, as such, they are entitled to judgment as a matter of law.[18]  Specifically, defendants argue that, at the times pertinent to this case: (1) Day was not entitled to USERRA protection; (2) even if Day was entitled to USERRA protection, defendants were not legally obligated to re-employ him; and (3) even if defendants were obligated to re-employ Day, they acted with

---

a private employer by a person, the district courts of the United States shall have jurisdiction of the action."  38 U.S.C.A. § 4323(b)(3).
    Day alleges that the Court has supplemental jurisdiction over Day's LMSRA claims.  *Id*.

[15]Rec. Doc. No. 1, p. 3, para. 14.  Day asserts that he was not paid any salary, wages or benefits during August, 2004 - December, 2004, while Alexander and LMC allegedly refused to re-employ him.  *Id.* at p. 4, para. 16.

[16]Rec. Doc. No. 1, pp. 4-5, paras. 17-23.  Day alleges that LMC and Alexander denied Day differential pay and vacation credits and refused to allow Day a lump sum contribution to his 401(K) following his deployments.  *Id.*

[17]Rec. Doc. No. 1, pp. 5-6, para. 25.  Day argues that it was only after defendants received a letter from Major William Blackston, an Employer Support of the Guard and Reserve representative, regarding Day's re-employment rights that defendants decided to re-employ Day.  Rec. Doc. No. 44, p. 4.

[18]Rec. Doc. No. 39.

reasonable promptness in fulfilling this obligation in light of the fact that Day had been absent for seven years.[19]

Defendants further argue that the employment benefits that Day claims he is entitled to, i.e., differential pay and vacation benefits, are not required benefits under USERRA or LMSRA.[20] Defendants assert that those benefits were voluntarily offered by LMC to its employees.[21]  Defendants argue that, in light of the fact that Day failed to comply with LMC's requirements to become eligible for differential pay and vacation benefits, Day's claims against LMC concerning those benefits should be dismissed.[22]

Defendants also contend that, should Day successfully establish a USERRA violation, there is no evidence to suggest that defendants acted willfully.[23]

## LAW AND ANALYSIS

### I. *RULE 56 STANDARD*

Summary judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the

---

[19]Rec. Doc. No. 39-2, p. 9.

[20]*Id.* at p. 19.

[21]*Id.*

[22]*Id.* at pp. 19-20.

[23]*Id.* at p. 21.

initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.; Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving

party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

**II. *DISCUSSION***

  **a. *USERRA GENERALLY***

  The purposes of USERRA are:

  (1) to encourage non-career service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
  (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt re-employment of such persons upon their completion of such service; and
  (3) to prohibit discrimination against persons for their service in the uniformed services.

38 U.S.C.A. § 4301.

USERRA provides that any person who is absent from his position of employment[24] due to service in the uniformed services[25]

---

[24]The term "employee" means:
Any person employed by an employer.  Such term includes any person who is a citizen, national, or permanent resident alien of the United States employed in a workplace in a foreign country by an employer that is an entity incorporated or otherwise organized in the United States or that is controlled by an entity organized in the United States, within the meaning of section 4319(c) of this title.
38 U.S.C.A. § 4303(3).

[25]"The term 'uniformed services' means:
The Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of person designated by the President in time of war or national emergency.
38 U.S.C.A. § 4303(16).

is entitled to re-employment rights and benefits and other employment benefits if:

> (1) the person . . . has given advance written or verbal notice of such service to such person's employer;
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five (5) years; and
> (3) the person reports to, or submits an application for re-employment to, such employer in accordance with the provision of 38 U.S.C.A. § 4312(e).

38 U.S.C.A. § 4312(a).

### b. *DAY'S ENTITLEMENT TO USERRA PROTECTION*

Defendants assert that Day is not entitled to USERRA's protection because he failed to timely apply for re-employment during breaks in his uniformed service.[26]

#### (1) *TIMELY APPLICATION FOR RE-EMPLOYMENT*

USERRA provides that, upon completing uniformed service, an employee is required to notify his pre-service employer of the employee's intent to return to his employment position by "either reporting to work or submitting a timely application for re-employment." 38 U.S.C.A. § 4312(e); *see* 20 C.F.R. § 1002.115. "Whether an employee is required to report to work or submit a

---

The term "service in the uniformed services" means:
The performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty, and a period for which a person is absent from employment for the purpose of performing funeral honors duty as authorized by section 12503 of title 10 or section 115 of title 32.
38 U.S.C.A. § 4303(13).

[26]Rec. Doc. No. 39-2, p. 14.

timely application for re-employment depends upon the length of service . . . ." 20 C.F.R. § 1002.115. An employee who fails to comply with USERRA's application requirements shall not automatically forfeit his entitlement to USERRA's protection, "but shall be subject to the conduct rules, established policy, and general practices of the employer pertaining to explanations and discipline with respect to absence from scheduled work." 38 U.S.C.A. § 4312(e)(3).

According to defendants, on September 14, 2001, Day received mobilization orders calling him to duty for a period of 180 days.[27] USERRA provides that, unless otherwise unreasonable or impossible, an employee must submit an application for re-employment within fourteen (14) days after completing a period of service, when the period is more than thirty (30) days but less than one hundred eighty-one (181) days.[28] 38 U.S.C.A. § (e)(1)(C).

Defendants assert that, after completing the above-referenced orders on March 30, 2002, Day failed to apply for re-employment within fourteen days as required by USERRA.[29] As a result of this

---

[27]*Id*. Day was ordered to report for duty on October 2, 2001. Rec. Doc. No. 39-5, p. 39 "Defendants' Exhibit 3, at LMC000146-149." Day's orders provided that he would be detached from active duty on March 30, 2002. *Id.*

[28]The term "period of service," as it is used in 38 U.S.C.A. § 4312(e), has been interpreted to mean consecutive days of service. *See Warren v. Int'l Bus. Machines Corp.*, 358 F.Supp.2d 301, 314 (S.D. N.Y. 2005). Therefore, the re-employment application duties that USERRA imposes on an employee returning from a period of uniformed service are determined by the number of consecutive days that the employee was absent during the period of service. *Id.*

[29]*Id*. Defendants contend that Day did not submit his next set of orders until April 24, 2002, nearly thirty-six (36) days after Day returned from his previous military leave of absence. Rec. Doc. No. 39-2, p. 14; *see also* Rec. Doc. No. 39-5, p. 42 'Defendants' Exhibit 3, at LMC000159-161."

alleged failure, defendants argue that Day became subject to LMC's normal absence policy and Day was subject to termination for failure to timely return to work at LMC.[30] Therefore, defendants argue that Day was not entitled to USERRA's protections.

Day concedes that after returning from his 180-day period of uniformed service on March 30, 2002, Day failed to apply for re-employment within fourteen days.[31] Day asserts that he did not apply for re-employment during this period because he anticipated receiving orders immediately calling him back to duty.[32] Nevertheless, Day acknowledges that, as a result of his failure to apply for re-employment during the aforementioned period, Day was subject to LMC's general absence policy.[33]

LMC's absence policy provides, "[a]n employee who does not

---

[30]Rec. Doc. No. 39-2, p. 15.
LMC's general absence policy provides:
> An employee who does not work return to work at the end of an approved absence (with reasonable accommodation, if appropriate) will be terminated without severance eligibility;
> No provisions of this or any other [LMC] policy or procedure will be constructed as an employment agreement. Employment with [LMC] can be terminated at any time with or without cause either by the employer concerned or by [LMC].
> Nothing in this policy is intended to conflict with federal, stat, or local law. To the extent any provision in this policy is inconsistent with any federal, state, or local legal requirement, those legal requirements shall govern and supersede any conflicting terms of this policy.

Rec. Doc. No. 44-17.

[31]Rec. Doc. No. 44, p. 12. The Court notes that Day admits that, during 1997-2004, there were two (2) gaps in Day's military service exceeding fourteen days. *Id*. One of the gaps in service is identified by defendants, i.e., the period following Day's March 30, 2002 detachment from service. However, neither party clearly indicates at what time the second gap in service occurred.

[32]*Id*. at p. 13. Day asserts that he anticipated receiving "follow-on" orders within days or weeks of completing his previous sets of orders. *Id*.

[33]*Id*.

-10-

return to work at the end of an approved absence (with reasonable accommodation, if appropriate) will be terminated from employment without severance eligibility."[34]  LMC's policy further provides that "[e]mployment with [LMC] can be terminated at any time with or without cause either by the employee concerned or by [LMC]."[35]

Day argues that this policy "captures" an acknowledgment of the frequency, duration, and timing of Day's calls to service.[36] As a result, Day asserts that LMC established a practice of accommodating Day's frequent absences from work due to uniformed service and it elected not to penalize Day for his failure to timely return to work in March, 2002.[37]  Considering this alleged

---

[34]Rec. Doc. No. 44-17, p. 11.  The Court notes that, in 2007, LMC implemented a new absence policy specifically tailored to employees that are members of the Armed forces.  LMC's new policy provides, "[i]f [an employee does] not return to work within the time limitation and other requirements specified by USERRA and any applicable state law, then [the employee] will be administratively terminated from employment without severance eligibility." Rec. Doc. No. 39-9, § 3.23.

[35]Rec. Doc. No. 44, p. 13.  This provision of LMC's company policy indicates that, once Day violated USERRA's application requirements and became subject to LMC's policy, Day became an "at will" employee subject to termination without cause.

[36]*Id*. at p. 14.  Day argues that, in light of this "acknowledgment," 38 U.S.C.A. § 4312(h) precluded defendants from penalizing Day as a result of the frequency of his orders.  *Id.* at p. 13.
   38 U.S.C.A. § 4312(h) provides:
> In any determination of a person's entitlement to protection under this chapter, the timing, frequency, and duration of the person's training or service, or the nature of such training or service (including voluntary service) in the uniformed services, shall not be a basis for denying protection of this chapter if the service does not exceed the limitations set forth in subsection (c) and  the notice requirement established in subsection (a)(1) and the notification requirements established in subsection (e) are met.

Day incorrectly asserts that 38 U.S.C.A. § 4312(h) protects Day from being denied USERRA entitlement based on the frequency of his orders.  Section 4312(h) clearly states that the frequency and duration of an employee's uniformed service shall not be a basis for denying if, among other things, USERRA's notification requirements **are met.**  38 U.S.C.A. § 4312(h) (emphasis added).

[37]Rec. Doc. No. 44, p. 14.

practice, Day contends that he never violated LMC's absence policy and that he is, therefore, entitled to USERRA benefits.[38]

The Court finds nothing in the plain language of LMC's absence policy suggesting that LMC's general practice was to permit an employee completing a period of uniformed service to forego returning to work in anticipation of orders recalling the employee to service. Such an interpretation of LMC's general policy is untenable considering the admitted unpredictability of military orders.[39]

Further, Day fails to provide any proper summary judgment evidence establishing that LMC created exceptions to its general policy in order to accommodate Day's frequent absences.[40] LMC's absence policy provides that "[a]ny deviation from [LMC's general]

---

[38]*Id.*

[39]Day testified that while awaiting re-employment with LMC in 2004, Day did not inform LMC that he had committed to orders that would deploy him to Malta. Rec. Doc. No. 44-12, p. 8 ("Day Dep., p. 192, ll. 1-8). Day further testified that he never informed LMC that he had committed to the above-referenced orders because Day did not have the orders in hand and **because orders can always get cancelled or rescinded**. *Id.* "Day Dep., p. 192, ll. 12-15."
The Court notes that Day does not provide, and the Court cannot find, any authority stating that an employee that is awaiting orders to be recalled to duty is exempt from USERRA's application requirement.

[40]Day offers letters that he sent to LMC's Human Resources Department as evidence that Day maintained constant communication with LMC and, based on this communication, LMC established a practice of accommodating Day's absences. *See* Plaintiff's Exhibit "K." In light of the fact that Day's letters to LMC are not authenticated, they are not proper summary judgment evidence and shall not be considered by the Court. *See Travland v. Ector County, Ex.*, 39 F.3d 319, at *5 (5th Cir. 1994).
Alternatively, even if Day's letters were admissible summary judgment evidence, Day does not offer, and the Court cannot find, any authority stating that an employee that maintains communications with his employer during the employee's uniformed service or during a gap in the employee's service is exempt from USERRA's application requirement. Day's letters likewise fail to establish that, in light of Day's communications, LMC implemented an internal policy that permitted Day to forego complying with LMC's absence policy after his completion of a period of uniformed service.

policy requires the prior approval of the corporate Vice President Human Resources or designee."[41]  Considering the fact that Day fails to provide any evidence that LMC's corporate Vice President of Human Resources approved the alleged alteration of LMC's general policy as it applied to Day, Day was subject to LMC's policy as written.

Neither party suggests that, during the twenty-five (25) days[42] after returning from service on March 30, 2002, Day attempted to return to work at LMC.  As such, the facts demonstrate that Day failed to comply with LMC's policy by not returning to work during the gap in his uniformed service.  As a result, Day forfeited his USERRA entitlement in 2002.  *See, e.g., Hodges v. Prestage Farms, Inc.*, 2007 WL 1153120, at *2, (N.D. Miss. April 18, 2007) (granting summary judgment in favor of employer where employee failed to comply with both USERRA's and his employer's deadlines for applying for re-employment).

Considering the foregoing, Day has failed to raise a genuine issue of material fact concerning his entitlement to the rights provided by USERRA.  Therefore, defendants are entitled to judgment as a matter of law with respect to Day's USERRA claims.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is

---

[41] Rec. Doc. No. 44-17, p. 11.

[42] Defendants incorrectly assert that thirty-six (36) days elapsed between Day's return from uniformed service on March 30, 2002 and his submission of new orders on April 24, 2002.  Rec. Doc. No. 39-2, p. 14.

**GRANTED** in that Day's USERRA claims against Cheryl Alexander and Lockheed Martin Corporation are **DISMISSED WITH PREJUDICE**.[43]

**IT IS FURTHER ORDERED** that Day's supplemental LMSRA claims against defendants are **DISMISSED WITHOUT PREJUDICE**.[44]

New Orleans, Louisiana, March 14th, 2008.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[43] In light of the Court's findings herein, the Court need not address the following issues raised by defendants:
(1) whether defendants were required by USERRA to rehire Day;
(2) whether defendants promptly rehired Day;
(3) whether Day is entitled to differential pay, accrued vacation, and seniority benefits; or
(4) whether defendants acted willfully in not immediately rehiring Day upon his return in 2004.

[44] *See* 28 U.S.C.A. § 1367(c); *see also White v. Elite Ins.*, L.L.C., 2008 WL 269025, at *1 (E.D. La. Jan. 29, 2008) (Barbier, J.) (quoting *Batiste v. Island Record, Inc.*, 179 F.3d 217, 221 n. 4 (5th Cir. 1999)); Thompson *v. City of San Antonio*, 2002 WL 1492276, at *8 (W.D. Tex. March 21, 2002).